UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUSAN M. KICH,                    :
                                  :CIVIL ACTION NO. 3:16-CV-570
          Plaintiff,              :
                                  :(JUDGE CONABOY)
          v.                      :
                                  :
CAROLYN W. COLVIN,                :
Acting Commissioner of            :
Social Security,                  :
                                  :
          Defendant.              :
                                  :

_____

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI.  (Doc. 1.)  She alleged disability beginning on November 20, 2009.  (R. 20.)  The Administrative Law Judge ("ALJ") who evaluated the claim, Jarrod Tranguch, concluded in his November 2, 2015, decision that, with her alcohol abuse, Plaintiff had the severe impairments of depression, alcohol abuse, alcoholic liver disease, and cirrhosis which did not alone or in combination meet or equal the listings.  (R. 23-26.)  He also concluded that if Plaintiff stopped the substance use, she would continue to have the severe impairments of alcoholic liver disease and cirrhosis but her depression would be non-severe.  (R. 355-36.)  He found that Plaintiff was disabled if the substance use disorder were included in her residual functional capacity ("RFC") assessment (R. 26-35) but without it, she was able perform light

work with certain nonexertional limitations and could perform past relevant work as a bank cashier (R. 37-38).  ALJ Tranguch found Plaintiff was not disabled from the alleged onset date to the date of the decision because the substance use disorder was a contributing factor material to the determination of disability. (R. 38.)

With this action, Plaintiff asserts that the Acting Commissioner's decision should be reversed or remanded for the following reasons: 1) the ALJ erred by failing to account for Plaintiff's social functioning and concentration persistence, and pace (Doc. 10 at 2); and 2) there is no legitimate medical basis for the ALJ's RFC finding (*id.* at 5).  After careful review of the record and the parties' filings, the Court concludes this appeal is properly granted.

## I. Background

### A.    *Procedural Background*

Plaintiff protectively filed for DIB and SSI on August 9, 2013.  (R. 20.)  The claims were initially denied on December 16, 2013, and Plaintiff filed a request for a hearing before an ALJ on January 12, 2014.  (*Id.*)

ALJ Tranguch held a hearing on June 23, 2015.  (*Id.*) Plaintiff, who was represented by an attorney, testified as did Vocational Expert ("VE") Michele Georgio.  (*Id.*)  As noted above, the ALJ issued his unfavorable decision on November 2, 2015,

2

finding that Plaintiff was not disabled under the Social Security Act during the relevant time period.  (R. 38.)

Plaintiff's request for review of the ALJ's decision was dated November 9, 2015.  (R. 14-15.)  The Appeals Council first denied Plaintiff's request for review of the ALJ's decision on February 2, 2016.  (R. 8-13.)  On March 2, 2016, the Appeals Council set aside the February 2, 2016, decision to consider additional information. (R. 1.)  After considering the additional information, the Appeals Council found no reason to review the ALJ's decision and again denied Plaintiff's request for review.  (*Id.*)  In doing so, the ALJ's decision became the decision of the Acting Commissioner. (*Id.*)

On April 6, 2016, Plaintiff filed her action in this Court appealing the Acting Commissioner's decision.  (Doc. 1.)  Defendant filed her answer and the Social Security Administration transcript on June 14, 2016.  (Docs. 8, 9.)  Plaintiff filed her supporting brief on July 29, 2016.  (Doc. 10.)  Defendant filed her brief on October 3, 2016.  (Doc. 11.)  Plaintiff filed a reply brief on October 19, 2016.  (Doc. 14.)  Therefore, this matter is fully briefed and ripe for disposition.

**B.    *Factual Background***

Plaintiff was born on June 18, 1958, and was fifty-one years old on the alleged disability onset date.  (R. 34.)  Plaintiff has a high school education and has past relevant work as a bank

cashier.  (*Id.*)

## 1.   **Impairment Evidence**

Plaintiff does not provide a summary of impairment evidence in either her supporting brief or reply brief.  (*See* Docs. 10, 14.) Rather, she highlights the "undisputed facts" that there are three treating source opinions in the record which support a finding of disability (Doc. 10 at 2 (citing R. 435, 556-60, 561-65)), there is no medical opinion in the record which supports the specific RFC findings which the ALJ made once substance abuse was factored out, the ALJ found that Plaintiff would have a mild limitation in social functioning and a mild limitation in concentration, persistence, and pace even if she stopped using alcohol (*id.* (citing R. 36)), and the ALJ's ultimate RFC included exclusively physical functional limitations and no mental functional limitations (*id.* (citing R. 37)).

Defendant provides a Statement of Facts, asserting that Plaintiff's functioning cannot be fully appreciated without a detailed factual background.  (Doc. 13 at 6-17 & n.6.)  Because the facts are undisputed, the Court will set out Defendant's recitation here.[1]

> Plaintiff has a history of outpatient treatment in 2006 for alcohol use (Tr. 332). Prior to the relevant period, she attended Alcoholics Anonymous (AA) meetings church

---

[1]  As needed, the Court will supplement Defendant's recitation in the Discussion portion of this Memorandum.

services for a  week or two (Tr. 332).

## [] **Medical Evidence**

Plaintiff alleged disability due to mental problems, bad kidneys, liver problems, and alcoholism (Tr. 216). The crux of Plaintiff's appeal, however, is that the ALJ did not properly account for her allegedly disabling mental impairments (Pl.'s Br. at 2-7). Therefore, the Commissioner will limit her recitation of the facts to evidence pertaining to Plaintiff's mental impairments. From September 29, 2009 through October 2, 2009, Plaintiff was admitted to First Hospital Wyoming Valley for increased anxiety and depression, difficulty sleeping, and trouble sleeping since she had a fight with her husband on September 27, 2009 (Tr. 311-25). (Tr. 314). She was diagnosed with major depression, recurrent, and alcohol abuse (Tr. 314). She was discharged in stable condition and she agreed to attend outpatient treatment and scheduled for drug and alcohol counseling (Tr. 312, 315).

On December 9, 2009, Plaintiff saw psychiatrist Matt Berger, M.D. (Tr. 332-35). At the time, Plaintiff was not taking any psychiatric medication (Tr. 332). She reported that following hospital discharge, she stopped taking Remeron, and although she initially followed up with Dr. Kafrissen, she stopped seeing him because of the distance to his office and because she did not care for him (Tr. 332). Plaintiff also reported that she did not attend scheduled drug and alcohol abuse counseling because, "I just don't want to go." (Tr. 332). She also told Dr. Berger that she stopped drinking for a few weeks after hospital discharge, but then started again (T. 332). Plaintiff explained that she would drink three glasses of wine or vodka and orange juice at night to unwind and if she would wake up in the middle of the night, she would have another drink (Tr. 332). She stated that she stopped drinking on December 4, 2009 (Tr. 332). Plaintiff said that she

5

had been off work since November 16, 2009
without pay (Tr. 402).  She said that her
boss would not let her return to work until
she had a doctor's note stating she was
stable enough (Tr. 402).

On mental status examination, Plaintiff
had a cooperative attitude (Tr. 333).  She
displayed sadness, a depressed affect, and
tearful speech (Tr. 333).  Plaintiff's
thought processes demonstrated coherence and
logic (Tr. 333).  Her associative thinking
was intact (Tr. 333).  Plaintiff did not have
delusions or hallucinations (Tr. 333).  She
denied suicidal or homicidal thoughts (Tr.
333).  Plaintiff was alert and oriented times
three  (Tr. 333).  Her immediate, recent and
remote memory was intact (Tr. 333).
Plaintiff's attention and concentration were
normal (Tr. 333).  She had fair judgment, a
lack of insight, and her knowledge and
vocabulary were consistent with education
(Tr. 333).

She was diagnosed with depressive
disorder, major recurrent unspecified;
alcohol abuse unspecified; and assessed a
Global Assessment of Functioning (GAF) rating
of 55 (Tr. 333-34).  Dr. Berger started
Plaintiff on Lexapro and Trazadone and called
the drug and alcohol center to schedule
Plaintiff an appointment (Tr. 334).

On December 14, 2009, [Plaintiff]
returned to Dr. Berger (Tr. 329-30).  After
being on medication, Plaintiff stated that
her quality of life was an 8 on a scale of 1-
10 (Tr. 329).  On mental status examination,
Plaintiff had an improvement in mood (Tr.
330).

On August 17, 2012, Plaintiff presented
for primary care treatment with Mark Lyons,
D.O., for multiple concerns, after being out
of care for one and a half years (Tr. 375).
Among other things, Plaintiff complained of
insomnia, anxiety, and intermittent visual
disturbances, including seeing "black spots"

6

fly by her eyes (Tr. 375).  It was noted that
Plaintiff had a history of regular alcohol
use/abuse (Tr. 375).  She stated that she
uses this to help with anxiety and insomnia
"since she is not prescribed anything by us
for these."  (Tr. 375).  She reported
drinking three alcoholic beverages per day
(Tr. 375).  On examination, there was an odor
of alcohol (Tr. 376).  Plaintiff refused to
go to the ER for immediate evaluation (Tr.
376).  She was instructed to go for STAT
bloodwork immediately upon leaving in order
to rule out any acute lab abnormalities
before the weekend, but Plaintiff admitted
that she drank the night before and did not
want this to show up in her bloodwork (Tr.
376).

     On March 4, 2013, Plaintiff complained
of insomnia and requested over the counter
medication to help her sleep (Tr. 369).  It
was noted that Plaintiff had a history of
alcohol abuse and she claimed that she only
drinks to help her sleep (Tr. 369).  She did
not particularly want help in cutting back on
the alcohol use (Tr. 369).  On May 20, 2013,
Plaintiff complained of vomiting and diarrhea
for three days (Tr. 366).  She admitted to
regular alcohol use and was encouraged to
avoid alcohol (Tr. 366-67).  Dr. Lyons felt
that it would be best for Plaintiff to be
examined in the ER, but she refused to go to
the ER at that time (Tr. 366-67).

     On July 29, 2013, Plaintiff presented to
Moses Taylor Hospital for lab testing (Tr.
326-34).  She said that she waited to get
labs testing because she "hates" hospitals,
doctors, and nurses (Tr. 336).  Plaintiff
left before all lab results were returned
(Tr. 337).  Based on the history, physical
exam, and date, the attending physician
diagnosed chronic alcoholism, malnutrition,
and anxiety disorder (Tr. 337).

     On August 14, 2013, [Plaintiff] returned
to primary care as follow-up from her ER
visit (Tr. 363).  Plaintiff complained of

7

severe headaches and double vision at times for a few weeks (Tr. 363). Plaintiff reported that she had her blood drawn but that the hospital staff would not let her go outside to smoke so she signed out against medical advice (Tr. 363). She did not get the results of her blood tests (Tr. 363). Plaintiff freely admitted drinking three large glasses of vodka every day for at least ten years (Tr. 363). There was an odor of alcohol when Plaintiff entered the room (Tr. 363). Plaintiff did view her drinking as a real problem, but did not want to pursue rehab (Tr. 363).

On February 7, 2014, Dr. Lyons noted that Plaintiff had worsening depression and that she was pursuing disability, which he supported (Tr. 535). He stated that Plaintiff needed to see a psychiatrist to consider medications (Tr. 535-36). He further stated that alcohol certainly can contribute to this but he did consider her disabled (Tr. 536).

On October 28, through November 3, 2014, Plaintiff was hospitalized for alcohol hepatitis (Tr. 442). On admission, her alcohol level was elevated at 328, and she stated that she was drinking three eight-ounce glasses of straight vodka a day (Tr. 438). Plaintiff refused to go to rehabilitation again (Tr. 442).

On two visits to Dr. Lyons in November 2014, Plaintiff stated that she had not touched alcohol (Tr. 538-45). Plaintiff's mood was mildly depressed and anxious, but pleasant (Tr. 539). Her thought process was linear and her insight was much more appropriate than in the past (Tr. 539). By the second visit, Plaintiff's mental status was intact (Tr. 543). Her insight and thought processes seemed much more clear (Tr. 543). Plaintiff seemed to be in good spirits and was thankful for the way things were going (Tr. 544). She was sleeping well, which was noted to be an improvement for her

8

(Tr. 544).

Plaintiff returned to Dr. Lyons on December 16, 2014 and January 7, 2015 (Tr. 502-09). Plaintiff stated that she was avoiding alcohol (Tr. 502, 505). Dr. Lyons discussed the possibility that her depression and anxiety may be contributing to her insomnia and started Plaintiff on low dose Prozac and Xanax (Tr. 507-08). On the next visit, in February 2015, Plaintiff stated that Prozac did not help and it gave her side effects (Tr. 553). Plaintiff still had some anxiety, but it was better than it had been (Tr. 553).

Plaintiff received treatment on November 18, 2014 and January 14, 2015 at Gastrointestinal Consultants (Tr.518-24). On these visits, she stated that she was completely abstinent from alcohol (Tr. 518-24). Plaintiff reported anxiety, depression, and panic disorder, but denied psychiatric treatment (Tr. 519, 522). Plaintiff was advised to seek ongoing alcohol avoidance programs, such as AA, but she declined (Tr. 518-24).

Treatment notes from Hematology & Oncology Associates of Northeastern PA, PC, in January and February 2015 do not document any psychiatric complaints (Tr. 527, 533). Plaintiff was alert and oriented times three with coherent speech. (Tr. 528, 534).

Plaintiff saw psychiatrist Oladapo Richard Osuntokun, M.D., two times in March 2015, after more than a five-year gap in mental health treatment (Tr. 569-71). Plaintiff reported not drinking for the past six months (Tr. 570). On mental status examinations, Plaintiff had fair eye contact, judgment, insight, and impulse control; and a moderately depressed mood and restricted affect, but was otherwise within normal limits with no suicidal or homicidal ideation, delusions, impulsivity, or obsessive/compulsions (Tr. 566-67, 570). He

diagnosed biopolar disorder, NOS, major
depression recurrent, moderate; generalized
anxiety disorder; and alcohol dependence, by
history (Tr. 567).  She was started on Prozac
and Risperdal, but did not return to Dr.
Osuntokun (Tr. 568, 571).

**[] Opinion Evidence**

On November 14, 2013, Tiffany Griffiths,
Psy.D., performed a psychological consultant
evaluation on behalf of the state agency (Tr.
424-29).  Plaintiff reported that her
symptoms of depression began approximately
ten years ago and were exacerbated in 2008
after her husband filed for divorce (Tr.
425).  Dr. Griffiths noted that Plaintiff's
symptoms were consistent with alcohol
dependency, and her ongoing use of alcohol
seemed to be her primary problem at the time
(Tr. 425).

On mental status examination, Plaintiff
appeared moderately ill at ease and anxious
(Tr. 425).  She smelled like alcohol (Tr.
425).  She denied drinking that day stating
"it must have been from last night."  (Tr.
426).  Plaintiff's hygiene was appropriate
(Tr. 426).  She ambulated independently (Tr.
426).  No behavioral or psychomotor oddities
were noted (Tr. 426).  Her attitude was
cooperative, yet she was uncomfortable (Tr.
426).  Her mood was depressed and anxious and
her affect was constricted and/or tearful
throughout (Tr. 426).  She denied any history
o[f] perceptual disturbances (Tr. 426).
Plaintiff's speech was clear and articulate,
her language reception and expression were
intact, and her thought process was logical
and coherent, although she did report to
having racing thoughts, which interrupted her
thinking (Tr. 426).  Plaintiff's intellectual
functioning appeared to fall in the average
range and her abstract thinking was intact
(Tr. 426).  Her concentration was poor since
she could not perform the serial 7's task and
only could recall three digits forward (Tr.
426).  Plaintiff's short-term memory was also

poor since she performed poorly on the Babock
story Recall task (Tr. 426).  Plaintiff's
long-term memory was intact (Tr. 426).
Impulse control, judgment, and insight were
all poor (Tr. 426).  Her reliability was
adequate (Tr. 426).  Dr. Griffiths diagnosed
alcohol dependency, ruled out bipolar
disorder (Tr. 426).  Dr. Griffith noted that
Plaintiff had marked symptoms of depression
and anxiety and ongoing alcohol dependence,
which seems to be a major contributing factor
to her mood instability (Tr. 426).  She was
not in treatment (Tr. 426).  She indicated
that Plaintiff should not be responsible for
her own finances due to her alcohol
dependency (Tr. 426).

     Dr. Griffiths completed a Medical Source
Statement of Ability to Do Work-Related
Activities (Mental) form (Tr. 421-22).
Plaintiff had mild limitation in the ability
to understand and remember simple
instructions (Tr. 421).  She had moderate
limitation in the ability to carry out simple
instructions, the ability to make judgments
on simple work-related decisions, and
understand and remember complex instructions
(Tr. 421-22).  She had marked limitation in
the ability to carry out complex
instructions, the ability to make judgments
on complex work-related decisions, interact
appropriately with the public, interact
appropriately with supervisors, interact
appropriately with co-workers, and respond
appropriately to usual work situations and to
change in a routine work-setting (Tr. 421-
22).

     On February 17, 2014, Dr. Lyons
completed a Medical Opinion Re: Ability to Do
Work-Related Activities (Tr. 425).  Dr. Lyons
indicated that Plaintiff had medical findings
of severely depressed mood and muscular
atrophy (Tr. 425).  He also opined that
Plaintiff could not work in any capacity at
the time (Tr. 425).

     Dr. Lyons also completed a Mental

Impairment Questionnaire (Tr. 436-37).  He indicated that Plaintiff had diagnoses of depression, hypertension, gastroesophageal reflex disease (GERD), and alcohol abuse (Tr. 426).  He noted that Plaintiff's depression was severe and he considered her disabled (Tr. 436).  She had a severely depressed mood and was tearful during examination (Tr. 437).  Plaintiff was currently on no medication due to financial constraints, worsening on disability (Tr. 437).  According to Dr. Lyons, Plaintiff had marked to extreme limitations in the ability to perform work-related activities (Tr. 437).

On April 14, 2015, Dr. Lyons completed a Mental Residual Functional Capacity (RFC) Questionnaire (Tr. 556-60).  Dr. Lyons opined that Plaintiff was unable to meet competitive standards or had no useful ability to function with respect to performing unskilled, semiskilled, and skilled work (558-59).

On June 24, 2015, Dr. Osuntokun completed a Mental RFC form (Tr. 561-65).  He opined that Plaintiff was unable to meet competitive standards with respect to performing unskilled, semiskilled, and skilled work (Tr. 563-64).  Dr. Osuntokun indicated that Plaintiff's alcohol or substance abuse contributed to her limitations (Tr. 565).

(Doc. 13 at 6-17.)

## 2.   **Hearing Testimony** [2]

Plaintiff testified that her daughter drives her most places because she is afraid to drive and gets nervous and shaky when she

---

[2]  As noted regarding the medical evidence, Plaintiff's appeal relates to the ALJ's consideration of her alleged mental impairments and the review of facts focused on evidence of mental health impairments.  (Doc. 13 at 6.)  Likewise, the Court will focus on Plaintiff's testimony regarding her mental health.

12

drives even short distances.  (R. 97-98.)  She said she stopped working for the credit union in 2009--they told her to get help because she was depressed and not performing well and not because of her drinking.  (R. 99.)  Plaintiff reported that she then saw a psychiatrist, Dr. Berger, twice in 2009 and did not return because she had no income.  (R. 100.)  She also said she had recently seen a new psychiatrist but could not recall his name, estimating that she had seen him two to three times in the preceding three months. (R. 100-01.)

In addition to the visits with psychiatrists in 2009 and 2015, Plaintiff testified that she had been hospitalized for three to four days at First Hospital Wyoming Valley.  (R. 102.)  (Although she could not remember the dates, the ALJ identified records of hospitalization from the end of September 2009 to the beginning of October 2009.  (R. 102.))  Plaintiff said she did not like the psychiatrist there and stopped seeing him because he was "very mean" to her.  (R. 102.)  She reported that she then went to Dr. Berger who gave her an excuse to return to work part time but her employer rejected it and fired her.  (R. 103.)

Plaintiff testified that she had not looked for work in the preceding year due to depression and she had not sought treatment from 2009 until shortly before the hearing because she "held everything in" and "pretended [she] was ok."  (R. 104.)  She also said her family doctor, Dr. Lyons, had tried to treat her

depression and anxiety and had given her Xanax and Prozac, but he told her to see a psychiatrist.  (R. 107.)

Regarding her consumption of alcohol at the time of the hearing, Plaintiff said she had not had a drink for eight or nine months and her heavy drinking began when she got laid off from work and separated from her husband.  (R. 108.)  Plaintiff was not attending AA or undergoing any treatment for alcohol abuse.  (R. 109.)

When asked by the ALJ how her mental health issues affected her on a daily basis, Plaintiff responded that some days she could not get out of bed, some days she wakes up crying because she is so depressed, and she hides from family except her daughter.  (R. 109.)

Plaintiff testified that she had trouble taking Prozac and, although her new psychiatrist thought the previous dosage was too high and prescribed a lower dose, it still made her "muscles jump." (R. 110.)  She said she lies down after she takes Xanax, a medication which helped with anxiety and stress.  (*Id.*)  Plaintiff also said that her new psychiatrist had put her on a different medication but she was unable to provide details.  (*Id.*)  Plaintiff noted that she talked to her psychiatrist when she went for hour-long visits but she was not otherwise receiving counseling or therapy.  (R. 111.)  She could not recall her psychiatric diagnosis.  (*Id.*)

14

ALJ Tranguch asked the VE to consider an individual of the same age, education and work experience as Plaintiff who could perform work at all exertional levels and would have the following limitations: she would be limited to occupations that would require no more than occasional stooping, crouching, bending, kneeling, and crawling; she should avoid climbing ladders, ropes or scaffolding; and she should avoid concentrated exposure to workplace hazards, such as unprotected heights and dangerous moving machinery. (R. 129.) The VE testified that such an individual would be able to do Plaintiff's previous job as a bank cashier. (R. 129-30.) This was also the case for the second hypothetical where the individual was limited to work at the light exertional level but not the third hypothetical where the individual was limited to the sedentary exertional level. (R. 130.)

The ALJ next asked the VE to consider the individual in the first two hypotheticals who was also limited to unskilled work, defined as work involving only simple routine tasks that are not performed in a fast paced environment, and was limited to only rare or incidental contact with customers or members of the general public. (R. 131.) The VE responded that such an individual could not perform Plaintiff's past work. (*Id.*)

If this individual were limited to light work, the VE testified that, at the light unskilled work level, there would be work available such as assembly worker, hand packer, and production

15

laborers.  (R. 132-33.)

When the ALJ added the limitations that the individual would need to take unscheduled breaks, be off task up to 20 percent of the workday, and be late to work, absent, or leave early two or more days per month, the VE testified that all employment would be eliminated.  (R. 133.)

**3.   ALJ Decision**

As noted above, ALJ Tranguch issued his decision on November 2, 2015.  (R. 20-39.)  He made the following Findings of Fact and Conclusions of Law:

1.   The claimant met the insured status requirements of the Social Security Act through December 31, 2014.

2.   The claimant has not engaged in substantial gainful activity since November 20, 2009, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3.   With the claimant's alcohol abuse, the claimant has the following severe impairments: depression, alcohol abuse, alcoholic liver disease, and cirrhosis (20 CFR 404.1520(c) and 416.920(c)).

4.   At all times relevant to this decision the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5.   After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorder,

the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) further limited as follows: the claimant is limited to occupations requiring no more than occasional stooping, crouching, bending, kneeling and crawling; should avoid climbing on ladders, ropes, and scaffolds; should avoid concentrated exposure to work place hazards such as unprotected heights and dangerous moving machinery; is limited to unskilled work involving only simple, routine tasks not performed in a fast paced work environment; is limited to only rare or incidental contact with customers or members of the general public; would need to take unscheduled breaks throughout the work day to rest or nap; would be expected to be off task most days up to 20% of the work day; and would be expected to be late to work, absent from work, or leave early from work two or more days per month.

6.   Based on all impairments, including the substance use disorder, the claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on June 18, 1958 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity based on all of the impairments, including the substance use disorder defined above (20 CFR 404.1568 and 416.968).

17

10. Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404,1566, 416.960(c), and 416.966).

11. If the claimant stopped the substance use, the claimant would continue to have the following severe impairments: alcoholic liver disease and cirrhosis (20 CFR 404.1520(c) and 416.920(c)).

12. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

13. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) further limited as follows: the claimant is limited to occupations requiring no more than occasional stooping, crouching, bending, kneeling, and crawling; should avoid climbing on ladders, ropes, or scaffolds; and should avoid concentrated exposure to work place hazards such as unprotected heights and dangerous moving machinery.

14. If the claimant stopped the substance use, the claimant would be able to perform past relevant work as a bank cashier. This work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if she stopped the substance use (20 CFR 404.1565 and 416.965).

18

15. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use (20 CFR 404.1520(f), 404.1535, 416.920(f) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(R. 23-38.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[3] It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a

---

[3] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

19

substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

Where substance abuse is an issue, a dual analysis must be conducted.  Defendant outlines the appropriate inquiry.  (Doc. 13

at 20-22.)

In matters concerning drug and/or
alcohol abuse, the Commissioner must conduct
the sequential evaluation process with the
consideration of all impairments, including
the substance use, and another sequential
evaluation process without consideration of
the substance use.  This dual analysis is
required because the United States Congress
expressed its intention to preclude drug
addition and alcoholism (DA&A) as a basis for
entitlement to Social Security benefits and
DIB in the Contract with America Advancement
Act of 1996, Publ L. No. 104-121, § 105, 110
Stat. 847 (1996), amending 42 U.S.C. §
423(d)(2).  The Contract with America
Advancement Act precludes an award of
benefits where DA&A is a contributing factor
material to the determination of disability.
*See id.*  Accordingly, where a claimant is
found to be disabled but suffers from DA&A,
the ALJ must conduct a DA&A analysis to
determine which of a claimant's limitations
would remain if the claimant stopped using
drugs or alcohol.  20 C.F.R. § 404.1535(b)(2)
(providing that the key factor to be
considered in determining whether DA&A is a
contributing factor material to determination
of disability is whether SSA would still find
her disabled if she stopped using drugs
and/or alcohol).  If the remaining limitation
would be disabling, the claimant's substance
abuse is not a contributing factor material
to her disability.  However, if the remaining
limitations would not be disabling, then the
claimant's substance abuse is material and
benefits must be denied.  *See* 20 C.F.R. §
404.1535(b)(2)(I); 42 U.S.C. § 423(d)(1).

. . . .

. . . .

In DA&A cases, the ultimate burden of
persuasion and proof remains with the
claimant.  42 U.S.C. § 405(a); 20 C.F.R. §
404.1512; *see* 68 Fed. Reg. 51153, 51155
(2003).  Indeed, the District Court for the
Western District of Pennsylvania has

> previously applied a substantial evidence
> standard of review.  (*See*, *e.g.*, *Taliaferro
> v. Astrue*, Civ. A. No. 10-0459, 2001 WL
> 198801 at 5 (W.D. Pa. May 23, 2001) (applying
> substantial evidence standard for determining
> whether DA&A was a material factor in
> claimant's disability).  *Accord Stitt v.
> Astrue*, Civ. A. No. 07-1346, 2008 WL 4412092
> at 5 (W.D. Pa. 2008).

(Doc. 13 at 10-20, 22.)

20 C.F.R. § 404.1535 specifically explains how the agency will make the determination whether the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (a) General.  If we find that you are
> disabled and have medical evidence of your
> drug addiction or alcoholism, we must
> determine whether your drug addition or
> alcoholism is a contributing factor material
> to the determination of disability.
>
> (b) Process we will follow when we have
> medical evidence of your drug addiction or
> alcoholism.
>
> > (1) The key factor we will examine in
> > determining whether drug addiction or
> > alcoholism is a contributing factor
> > material to the determination of
> > disability is whether we would still
> > find you disabled if you stopped using
> > drugs or alcohol.
> >
> > (2) In making this determination, we
> > will evaluate which of your current
> > physical and mental limitations, upon
> > which we based our current disability
> > determination, would remain if you
> > stopped using drugs or alcohol and then
> > determine whether any or all of your
> > remaining limitations would be
> > disabling.

22

> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535.

Potentially relevant to the present inquiry, Social Security Ruling 13-2P provides the following:

> We will find that DAA is not material to material to [sic] the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-concurring mental disorder(s) would improve to the point of nondisability in the absence of DAA.

SSR 13-2P, 2013 WL 621537, at *9 (SSR 13-2P section 7(d)).[4]

As set out above, the instant decision was decided when the ALJ determined at step four of the sequential evaluation process that Plaintiff could perform her past relevant work as a bank cashier if she stopped the substance use--a finding which led to the conclusion that the substance use disorder was a contributing factor material to the determination of disability and, therefore, Plaintiff was not disabled under the Act during the relevant time.

---

[4] Plaintiff interprets this provision to mean that "if you cannot tell if ongoing substance use is material, then the claimant wins."  (Doc. 10 at 6.)

(R. 38.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.  *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted).  The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."  *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."  *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated."  *Hernandez v. Comm'f of Soc. Sec.*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not

precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v. Comm'r of Soc. Sec.*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

### IV. Discussion

Plaintiff asserts that the Acting Commissioner's decision should be reversed or remanded for the following reasons: 1) the ALJ erred by failing to account for Plaintiff's social functioning and concentration persistence, and pace (Doc. 10 at 2); and 2) there is no legitimate medical basis for the ALJ's RFC finding (*id.* at 5).  Both of Plaintiff's arguments relate to ALJ Tranguch's RFC determination and the lack of mental health related limitations therein.

As a general matter, an ALJ must consider limitations and restrictions associated with all of a claimant's impairments, both severe and non-severe, when formulating the RFC.  20 C.F.R. § 404.1545(a)(2).  "[T]he Commissioner's procedures do not permit the ALJ to simple rely on his finding of non-severity as a substitute for a proper RFC analysis."  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013).[5]  "A conclusion that the claimant's mental

---

[5]  In support of this assertion, *Wells* quoted SSR 96-8:

> criteria used at steps two and three of the analysis to evaluate mental impairments are "not an RFC assessment," and "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]."). 

727 F.3d at 1065 (quoting SSR 96-8, 1996 WL 374184, at *4 (July 2, 1996)) .

27

impairments are non-severe at step two does not permit the ALJ to simply disregard those impairments when assessing a claimant's RFC and making conclusions at step four and five." *Id.* at 1068-69.

With the substance use disorder, the ALJ found Plaintiff's depression to be severe at step two. (R. 24.) At step three ALJ Tranguch analyzed Plaintiff's mental disorder under listings 12.04 and 12.09 and found, regarding "paragraph B" criteria, that Plaintiff had marked difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. (R. 24-25.) If Plaintiff stopped the substance use, the ALJ found at step two that her depression would be non-severe. (R. 36.) He again considered "paragraph B" criteria to determine the extent to which any mental limitations would remain if the substance use was stopped and concluded Plaintiff would have a mild limitation in social functioning and a mild limitation in concentration, persistence or pace. (*Id.*) Having found that, with the substance use disorder, Plaintiff's RFC limitations included being limited to unskilled work involving only simple routine tasks not performed in a fast paced work environment with only limited to rare or incidental contact with customers or members of the general public, the ALJ found no mental limitations in the RFC if Plaintiff stopped the substance use. (R. 27, 37.) The analysis supporting the second RFC incorporates the discussion of the first RFC by reference without any specific mention of symptoms or limitations related to mental impairments. (R. 37-38.)

28

Regarding concentration, persistence, or pace, Plaintiff asserts the ALJ's psychiatric review technique ("PRT") finding at step two that Plaintiff would have mild limitations in these areas if she stopped drinking alcohol means that he was bound to account for these limitations when formulating his RFC. (Doc. 10 at 3 (citing R. 36).) She frames the issue as "whether the ALJ's finding of at least some degree of mental functional limitation was accounted for in the RFC finding." (*Id.* at 3 n.1.) Plaintiff maintains that "[u]tilization of the PRT is absolutely mandatory for all SSA adjudicators," adding that [i]t is well-settled in the Third Circuit that PRT findings must find adequate expression via specific functional limitations in the RFC determination." (*Id.* (citing *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004); *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011)).) Plaintiff admits that "in many cases failure to account for such mild limitations in an RFC would likely be harmless error, but that is not so here where the ALJ's denial is premised upon Plaintiff being able to return to her skilled and socially intensive PRW [as a bank cashier]." (*Id.* at 4.) She argues, however, that "any diminutions in concentration, persistence, and pace could significantly affect the ability to perform such skilled work," and, therefore, it was error for the ALJ to fail to account for the mild limitation in this area. (*Id.*) Plaintiff adds that even a mild limitation in social functioning, which the ALJ also found present here, would likely

preclude work as a bank cashier because the job is socially intensive.  (*Id.* at 5.)

Defendant contends that Plaintiff's reliance on *Ramirez* is misplaced.  First, Defendant maintains that where the Third Circuit held in *Ramirez* that the limitation to one to two-step tasks did not adequately encompass a finding that the plaintiff often had deficiencies in concentration, persistence, or pace, the Circuit Court acknowledged that there could be an explanation for the omission such as a finding that the deficiency was so minimal that it would not limit the plaintiff's ability to perform simple tasks.  (Doc. 13 at 24.)  Second, Defendant asserts that the plaintiff in *Ramirez* had an extensive mental health history and evidence suggested that her deficiency in pace would limit her ability to perform simple tasks under a production quota where here no evidence suggests that Plaintiff's deficiency in pace would limit her ability to perform unskilled work.  (*Id.* at 24-25 (citing *Ramirez*, 372 F.3d at 554; *McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008) (holding that a hypothetical question which limited the plaintiff to "simple, routine tasks" adequately captured the ALJ's conclusion that Plaintiff was "moderately limited in concentration, persistence, and pace")).)

The Court is not persuaded by the distinctions asserted by Defendant.  Regarding a potential explanation for the omission of the mental health related limitations in the second RFC, the ALJ made no explicit finding that the deficiencies were so minimal that

30

they would not limit Plaintiff's ability to perform simple tasks. Importantly, the ALJ did not include any limitations in the second RFC which could be construed to be related to mental health issues, such as limiting Plaintiff to unskilled work or to performing simple one or two-step tasks such as in *Ramirez*, 372 F.3d at 554, and *McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008). Thus, Defendant's statements that these types of limitations capture PRT limitations (Doc. 13 at 24-25) are not applicable here.[6]

By simply incorporating his previous RFC discussion by reference (R. 38), the ALJ essentially eliminated mental health related limitations without explanation--he does not explain why mental health related limitations drop out of the RFC completely where his previous discussion includes records of office visits and opinions which post date the time when Plaintiff allegedly stopped drinking and where medical providers continued to find mental health related issues.   (R. 29-33 (citations omitted).)

Plaintiff allegedly stopped drinking alcohol after her November 2014 hospitalization and remained abstinent throughout the relevant time period.  (*See*, *e.g.*, R. 108, 514.)  Although she did not complain of, or feel that she needed treatment for, depression

---

[6]   The lack of such limitations is also noteworthy because the VE testified that if the hypothetical individual's limitations included being limited to unskilled work, defined as work "involving only simple routine tasks that are not performed in a fast-paced work environment," the individual would be precluded from performing Plaintiff's past relevant work.  (R. 131.)

at her November 11, 2014, visit withe Dr. Lyons (R. 538), and on November 25, 2014, he noted that she appeared "much brighter and more alert than at her previous appointment (R. 542), he noted on January 7, 2015, that Plaintiff had complaints of depression, anxiety, and irritability (R. 505, 549).[7]  He also noted that she had not tolerated Lexapro and had taken Xanax on a few occasions and felt it helped for a short period of time.  (*Id.*)  On examination, Dr. Lyons found that Plaintiff appeared anxious and depressed but was in no acute distress.  (R. 506, 550.)  He also reported that Plaintiff's affect was blunted, her mood was anxious, tearful, and labile with intermittent irritability, her thought process was grossly linear, and her insight was fair but at baseline.  (*Id.*)  He planned to start Plaintiff on Prozac and noted that she could continue to take Xanax sparingly.  (R. 508, 552.)  On February 3, 2015, Plaintiff reported to Dr. Lyons that Prozac did not help and gave her side effects, and Plaintiff asked for a different type of medication to help with her mood.  (R. 553.)  Dr. Lyons noted that Plaintiff still had anxiety but it was better than it had been.  (*Id.*)  He decided to try a low dose of Effexor.  (R. 555.)

At her March 17, 2015, initial visit with Dr. Osuntokun, Plaintiff was only taking Xanax because of side effects of other

---

[7]  ALJ Tranguch noted that this was Plaintiff's last documented visit with Dr. Lyons.  (R. 30.)   However, as set out in the text, Plaintiff also saw Dr. Lyons on February 3, 2015.  (R. 553.)

medications.  (R. 569.)  Plaintiff reported depression and anxiety and her daughter reported that she had mood swings where she was fine one moment and the next moment she could be very nasty, irritable and mean, and she got easily upset.  (R. 569.)  Mental status examination showed that Plaintiff had fair eye contact, moderately depressed mood, restricted affect and fair insight, judgment and impulse control.  (R. 570.)  Dr. Osuntokun concluded that Plaintiff had been on too high a dosage of Prozac which caused restlessness so he reduced the dosage which he thought would help with anxiety, eating disorder, OCD symptoms and depression.  (R. 571.)  He noted that "she will need mood stabilization later" and planned to add Lamictal in the future.  (*Id.*)  On March 30, 2015, Plaintiff subjectively reported that she still had anxiety and depression, could not think straight, had intrusive thoughts all the time, had mood swings, and could not control her emotions.  (R. 566.)  Plaintiff's daughter confirmed that Plaintiff continued to exhibit mood swings and anger, she made "weird" phone calls, got confused, and talked about irrelevant things.  (*Id.*)  Dr. Osuntokun noted on mental status examination that Plaintiff presented as alert and cooperative with speech rate, tone, volume, latency and articulation within normal limits.  (*Id.*)  He also found the following: Plaintiff had fair eye contact, moderately depressed mood, restricted affect, and fair insight, judgment, and impulse control.  (R. 566-67.)  He adjusted Plaintiff's Prozac regimen and added Risperdal to help with anger, mood swings, weight issues, and

weird behavior and thoughts.  (R. 568.)

This review of medical evidence of record from the time period when Plaintiff had stopped using alcohol shows that both her primary care physician and the psychiatrist to whom she was referred continued to find that Plaintiff had mental health problems that required medication management.  While the treatment is not extensive and overall the mental impairment evidence is thin, the evidence does not show that Plaintiff had no mental health related limitations when she stopped drinking.  Thus, the ALJ's general reliance on evidence discussed in connection with his first RFC finding to support his second RFC assessment which contained no mental health related limitations is inadequate. While ALJ Tranguch's conclusion that if Plaintiff stopped the substance use she would have a mild limitation in social functioning and a mild limitation in concentration, persistence, or pace (R. 36) may be supported by the evidence, the Court cannot conclude that the absence of mental health related limitations in the RFC (R. 37-38) is supported by substantial evidence.

Furthermore, the ALJ's reliance on his discussion of Dr. Lyons' opinion evidence is problematic for the abstinence period. (R. 32 (citing Exhibits 21F; 10F; 9F).)[8]  For example, one reason

---

[8]  Exhibit 21F was completed on April 14, 2015, by Stacey A. Swanson, PA-C, "(for: Mark J. Lyons, DO)."  (R. 560.)  The Court recognizes that the opinion of a PA may be distinguished from that of a treating physician.  *See Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361-62 (3d Cir. 2011); 20 C.F.R. § 404.1513(d)(1); Social Security Ruling 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006).  However, because ALJ Tranguch considered

ALJ Tranguch cited for according Dr. Lyons' opinion, particularly regarding mental residual functional capacity, limited weight was that he "offered no opinion regarding the effects of the claimant's alcohol abuse on her level of functioning."  (R. 32.)  However, on April 14, 2015--approximately five months after Plaintiff stopped drinking--the Medical Residual Capacity Questionnaire completed for Dr. Lyons contains an opinion on this issue.  The next-to-last question on the Medical Residual Capacity Questionnaire asked "[i]f your patient's impairments include alcohol or substance abuse, do alcohol or substance abuse contribute to any of your patient's limitations set out above?".  (R. 560.)  The respondent checked "No" and added "not presently."  (*Id.*)  By way of further explanation, it was noted that Plaintiff had a history of alcohol dependence but she had been in remission since November 2014-- "[s]he has had severe anxiety for many, many, years and had used alcohol to self-treat this."  (*Id.*)  When asked what changes would be made to the description of patient's limitations if she were totally abstinent from alcohol or substance abuse, the response indicated "[s]he remains abstinent, thankfully, but this does add to her chronic anxiety as she is forever battling her addiction as well as her underlying psychiatric impairment."  (*Id.*)

ALJ Tranguch's finding that the lack of contemporaneous references and descriptions of in-office panic attacks or mental

---

this the opinion of Dr. Lyons (R. 32), the Court does the same in analyzing the ALJ's rationale for discounting it.

functional restrictions or limitations was significant is also problematic for the remission period in that the April 14, 2015, Mental Residual Functional Capacity Questionnaire requests the provider to identify "*clinical findings* . . . that demonstrate the severity of your patient's mental impairments and symptoms" and the provider responded "I have witnessed panic attacks in the office during interviews over the past few months."[9] (R. 556.)

In sum, although Plaintiff's mental health evidence is thin, the ALJ did not find it so thin that he found her without limitations in social functioning and concentration, persistence, or pace if she stopped the substance use.  (R. 36.)  Having found mild limitations in these areas, he did not provide any explanation as to why he excluded any related limitations in the RFC if Plaintiff stopped the substance use.  (R. 37-38.)  Further, as the examples cited above show, the ALJ did not discuss probative evidence supporting medical source opinions regarding limitations which remained when Plaintiff was abstinent.  Thus, the Court cannot conclude the RFC is supported by substantial evidence, *see Cotter*, 642 F.2d at 706-07, and the case must be remanded for further consideration.[10]

---

[9]  Though outside the relevant time period, the Medical Opinion dated January 25, 2016, by Dr. Lyons and Ms. Swanson similarly indicates that Plaintiff had been "[e]xplosive and easily agitated on multiple occasions in office and on the phone."  (R. 574.)

[10]  With this determination, further discussion of Plaintiff's argument that the RFC finding had not legitimate medical basis (Doc. 10 at 5) is not warranted.

## **V. Conclusion**

For the reasons discussed above, Plaintiff's appeal is properly granted and this matter is remanded to the Acting Commissioner for further consideration.  An appropriate Order is filed simultaneously with this action.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: November 2, 2016